FILED
2022 Mar-15  AM 09:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ALABAMA**
**NORTHEASTERN DIVISION**

| | | |
|---|---|---|
| **MARY DRAKE BLACK,** | } | |
| | } | |
| **Plaintiff,** | } | |
| | } | |
| **v.** | } | **Case No. 5:20-CV-01394-RDP** |
| | } | |
| **KILOLO KIJAKAZI, Acting** | } | |
| **Commissioner of Social Security,** | } | |
| | } | |
| **Defendant.** | } | |

**<u>MEMORANDUM OF DECISION</u>**

Plaintiff Mary Drake Black brings this action pursuant to Section 205(g) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability and Disability Insurance Benefits ("DIB"). *See* 42 U.S.C. § 405(g). Based upon the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.       Proceedings Below**

Plaintiff filed an application for disability and DIB on July 13, 2018, alleging that she became disabled beginning March 29, 2018. (R. 234-35). Plaintiff's application was denied initially and upon review. (R. 101). On February 11, 2019, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (R. 115-16). That request was granted and a hearing was conducted on July 9, 2019, before ALJ Patrick Digby. (R. 43-78, 117-31). Plaintiff, her attorney, and Vocational Expert ("VE") Marcia Schulman were present at the hearing. (R. 43).

In the ALJ's decision entered November 6, 2019, the ALJ determined that from March 29, 2018, through the date of the decision, Plaintiff was not under a disability within the meaning of

Sections 216(i) and 223(d) of the Act. (R. 37). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision on July 29, 2020, the ALJ's decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (R. 1-8).

At the time of the hearing, Plaintiff was 49 years old and had two years of college. (R. 48). She has past work experience as an office manager, general clerk, and payroll clerk. (R. 36, 73, 244). Plaintiff alleges she has various disabilities – depression, mixed connective tissue disease, chronic active Epstein Barr virus, chronic fatigue, immune deficiency with chronic conditions, lymphedema, neuro disorder, fibromyalgia, back and hip problems, asthma, tremors, heart issues, GERD, and thyroid issues – which began March 29, 2018 and rendered her unable to work. (R. 79, 81, 259). During her alleged period of disability, Plaintiff received relevant medical care from the Northern Virginia Center for Arthritis and from Cullman Internal Medicine. (R. 940-1061, 1218-47, 1283-92).

On October 6, 2017, Plaintiff was seen as a new patient at the Northern Virginia Center for Arthritis. (R. 1244-45). Plaintiff presented with complaints of "over 1 year of brain fog, body aches, [and] fatigue," but appeared to be in no acute distress. (*Id.*). Plaintiff was diagnosed with "other fatigue, Myalgia, Raised antibody titer positive anti-centromere and EBV, and Raynaud's syndrome without gangrene." (R. 1246). Plaintiff was prescribed Plaquenil and Prednisone and instructed to follow-up in three weeks. (R. 1242). At Plaintiff's next appointment on November 29, 2017, it was noted that she was doing significantly better. (R. 1236). Her joint swelling and stiffness had significantly improved; her left knee was still mildly swollen but much better; she was doing PT for her herniated disc which was helping; and she had started using a CPAP and was less fatigued. (*Id.*). At the beginning of 2018, Plaintiff continued to report her complaints of fatigue

to the Northern Virginia Center for Arthritis, but generally appeared to be "in no acute distress." (R. 1219-20, 1226-27, 1230-31).

On February 15, 2018, Plaintiff was seen at Cullman Internal Medicine for prescription refills and to discuss a referral for her "mixed connective tissue disorder," as well as her "IGA deficiency." (R. 775). Plaintiff again reported fatigue, generalized weakness, joint pain, and joint swelling; however, as before, was found to be in no acute distress. (R. 776). On April 3, 2018, Plaintiff's assessment included "chronic fatigue." (R. 773).  On May 29, 2018, Plaintiff returned to Cullman Internal Medicine with complaints of "widespread pain, fatigue, nonrestorative sleep and a clinical picture that is consistent with fibromyalgia." (R. 766). As a result, Cullman Internal Medicine recommended Plaintiff's sleep disorder be addressed in hopes of helping to "relive fatigue and widespread pain from fibromyalgia." (*Id.*). It was noted that "[f]ibromyalgia tender points [were] present (18/18)." (*Id.*). At a follow-up appointment on July 9, 2018, it was noted that Plaintiff's sleep had improved, and her fatigue was somewhat improved also. (R. 750). On August 21, 2018 and October 2, 2018, Plaintiff reported significant improvement with her sleep and some improvement with fatigue to Cullman Internal Medicine, but it was consistently noted that "[f]ibromyalgia tender points [were] present (18/18)." (R. 738, 999-1003). In November 2018, Cullman Internal Medicine continued to assess Plaintiff's fibromyalgia, noting her fibromyalgia and fatigue had "remained the same." (R. 1050).

On January 9, 2019, Plaintiff was seen by Cullman Internal Medicine for "follow up of fibromyalgia, unspecified connective tissue disease, nonrestorative sleep disorder," and complaints of swelling and pain in her left knee. (R. 986). She "present[ed] with increasing flareups of symptoms consistent with fibromyalgia," noting that her "[s]leep continue[d] to be good . . . [but f]atigue ha[d] worsened." (R. 986-90). Plaintiff was given a corticosteroid injection in her left

knee and sent home. (R. 990-91). However, on February 6, 2019, Cullman Internal Medicine reported Plaintiff's "[s]leep is not as good . . . [and f]atigue continues to be an issue." (R. 973). Dr. Fernandez of Cullman Internal Medicine provided a letter dated February 9, 2019, stating:

> The nature of [Plaintiff's] medical problems is one that is chronic, characterized by intermittent exacerbations of symptoms. There is no way of anticipating [or] predicting her flareups and once they occurred the treatment is only symptomatic. The response to treatment may take a few days to a few weeks or even longer.

(R. 1218).   Dr. Fernandez concluded, "[i]t is my opinion, with a reasonable degree of medical certainty, that [Plaintiff] is permanently disabled and unable to maintain gainful employment." (*Id*.). On August 20, 2019, at a fibromyalgia follow-up, Cullman Internal Medicine noted that Plaintiff's "[p]ain [was] worse between [her] shoulders." (R. 1386).

## II.    ALJ Decision

Disability is determined under a five-step test. 20 C.F.R. §§ 404.1520, 416.905(a). First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i), (b). Substantial work activity is defined as "work activity that involves doing significant physical or mental activities," while gainful activity refers to "work activity . . . for pay or profit." 20 C.F.R. § 404.1572(a)-(b). If the ALJ finds that the claimant engages in substantial gainful activity, then the ALJ will find the claimant "not disabled regardless of [the claimant's] medical condition or [their] age, education, and work experience." 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has "a severe medically determinable physical or mental impairment . . . [that] meets the duration requirement in § 404.1509, or a combination of impairments that is severe and meets the duration requirement." 20 C.F.R. § 404.1520(a)(ii). Absent a severe impairment, the ALJ "will find that [the claimant is] not disabled." *Id*. Third, the ALJ will "also consider the medical severity of [the claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(iii). If the claimant's impairment "meets or equals one

4

of [the] listings in appendix 1 of this subpart and meets the duration requirement," then the ALJ will find that the claimant is disabled. *Id.*

At this point in the five-step test, if the ALJ has determined the claimant is not disabled, the ALJ will then determine the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(a)(4). A claimant's RFC refers to "the most the claimant can still do despite . . . limitations . . . based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(1), (3); *see* § 404.1520(a)(4)(e). In the fourth step, using the RFC, the ALJ will look at the claimant's past relevant work, and if the claimant "can still do [their] past relevant work, [the ALJ] will find that [the claimant is] not disabled." 20 C.F.R. § 404.1520(a)(4)(iv), (f), (h). If the ALJ has not found the claimant to be disabled in step four, the ALJ will move on to the fifth and final step. 20 C.F.R. § 404.1520(a)(4). At step five the burden of proof shifts to the ALJ who "must provide evidence about the existence of work in the national economy that [the claimant] can do given [the claimant's] residual functional capacity . . . age, education, and work experience." 20 C.F.R. §§ 404.1560(c), 404.1512(b)(3).

Here, the ALJ determined that Plaintiff: (1) has not engaged in substantial gainful activity since the date of her alleged disability, March 29, 2018; (2) has the severe impairments of asthma, status post-cervical fusion, depression, and PTSD that significantly limit her ability to perform basic work activities; (3) her impairments or combination of impairments do not meet or medically equal one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) has the RFC to perform light work, as defined in 20 C.F.R. § 404.1567(b), with certain exceptions: she can occasionally lift and/or carry (including upward pulling of) twenty pounds; she can frequently lift and/or carry (including upward pulling of) ten pounds; she can sit for six hours in an eight-hour workday with normal breaks; she can stand and/or walk with normal breaks for six hours in an

eight-hour workday; she can frequently push and/or pull, (including operation of hand or foot controls) twenty and ten pounds; no ladders, ropes, or scaffolds, or working at unprotected heights or around dangerous machines; no commercial driving; she must avoid frequent exposure to fumes, odors, gas, and poor ventilation; she is able to understand, remember, and carryout short simple instructions, and can concentrate and remain on task for two-hour periods across an eight-hour workday, five-day workweek with all customary work breaks; any changes in her work environment should be infrequent; and she can have occasional contact with the general public, coworkers, and supervisors. (R. 20-37). She is unable to perform any past relevant work, but she is able to perform other jobs that exist in significant numbers in the national economy. *Id.* Therefore, the ALJ determined Plaintiff was not disabled as defined by the Act and as a result, not entitled to disability or DIB. (R. 37).

## III.    Plaintiff's Argument for Reversal

Plaintiff presents three arguments for reversal. *First*, Plaintiff argues the ALJ erred in determining her fibromyalgia was not a medically determinable impairment. (Doc. # 14 at 1, 13-21). Plaintiff asserts that, because her fibromyalgia is a medically determinable impairment, and the ALJ did not apply the proper legal standard, substantial evidence does not support the ALJ's step two determination. (*Id*. at 14, 19-21) (citing SSR 12-2p, 2012 WL 3104869 (July 25, 2012)). Plaintiff argues that because the ALJ did not properly consider fibromyalgia as a medically determinable disease, the ALJ did not properly consider whether all her medically determinable impairments, singularly and in combination, could cause disability. (*Id*. at 20-21) (citing *Hill v. Barnhart*, No. 1:06-CV-0133, 2007 WL 438161, at *11 (N.D. Ga. Jan. 16, 2007); *Bowen v. Heckler*, 748 F.2d 629, 635 (11th Cir. 1984)). Plaintiff contends that because fibromyalgia itself can be disabling, and if properly diagnosed, can satisfy the pain standard and lead to a disability

determination, the ALJ did not analyze all the evidence or provide sufficient explanation of the weight given. (*Id*. 17-21) (citing *Reliford v. Barnhart*, 444 F. Supp. 2d 1182, 1187 (N.D. Ala. 2006)). As a result, Plaintiff asserts that the ALJ's decision is not supported by substantial evidence. (*Id*. 20-21) (citing *Cowart v. Schweiker*, 662 F.2d 731, 735 (11th Cir. 1981)).

*Second*, Plaintiff argues the ALJ did not properly evaluate the medical opinions of Celia Fernandez, M.D., Evelynne Flores, FNP, and Erin Collier, FNP (Doc. # 14 at 1, 21-30). Although Plaintiff agrees that each of those opinions contains statements on issues reserved to the ALJ – namely, statements that Plaintiff is disabled and unable to maintain gainful employment. Plaintiff disagrees with the ALJ's determination that the proffered opinions are neither probative nor persuasive. (*Id*. at 27-30).

Because each opinion also includes statements about what Plaintiff can still do despite her impairments and her ability to perform the physical demands of work activities (including limitations on her ability to maintain adequate work attendance and be on task), Plaintiff asserts that these three medical opinions are not opinions related to whether she is disabled. (*Id*. at 28-29) (citing 20 C.F.R. §§ 404.1513(a)(2)(i), 404.1520b(c)(3)). Thus, Plaintiff argues that only those portions of each assessment that opines Plaintiff is disabled and unable to maintain gainful employment should have been disregarded, and it was error for the ALJ to determine these medical opinions, as a whole, were neither probative nor persuasive. (Doc. # 14 at 21-30) (citing 20 C.F.R. §§ 404.1513(a)(2), 404.1520b(c); *Johns v. Bowen*, 821 F.2d 551, 555 (11th Cir. 1987); *Samuel v. Acting Comm'r of Soc. Sec.*, 959 F.3d 1042, 1046 (11th Cir. 2020); *Miller v. Apfel*, No. Civ.A.97–0934CBG, 1999 WL 1320296, at *3 (S.D. Ala. July 2, 1999); *Bailey v. Comm'r of Soc. Sec.*, 802 F. App'x 462, 465 (11th Cir. 2020)). (Doc. # 14 at 29-30). Plaintiff further argues that the ALJ's articulated reasons for discrediting these medical opinions are not supported by substantial

evidence. (Doc. # 14 at 29-30)) (citing *Hines v. Comm'r of Soc. Sec.*, 585 F. App'x 758, 764-65 (11th Cir. 2014); *Cowart*, 662 F.2d at 735; *Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984)).

*Third*, Plaintiff asserts the ALJ's determination of the effect of her symptoms on her ability to perform work-related activities is not based on substantial evidence. (*Id*. at 2, 30-34). In particular, Plaintiff argues that the ALJ's determination that her subjective statements concerning intensity, persistence, and limiting effects of her symptoms are not entirely consistent with the medical record, and not supported by substantial evidence. (*Id*. at 34). Although the ALJ must consider all objective and subjective evidence when evaluating a claimant's statements regarding intensity, persistence, or limiting effects, objective proof of the pain itself is not required, and inconsistencies in a claimant's statements made at varying times does not necessarily mean her statements are inaccurate. (*Id*. at 31) (citing 20 C.F.R. § 404.1529(c); *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991); *Elam v. R.R. Ret. Bd.*, 921 F.2d 1210, 1215 (11th Cir. 1991); SSR 16-3p, 2017 WL 5180304 (October 25, 2017)).

As a result, Plaintiff argues that the ALJ's consistency determination – specifically concerning her affidavit regarding the frequency of her symptoms being neither probative nor persuasive – is not supported by substantial evidence; the failure of the ALJ to articulate adequate reasons for discrediting her subjective testimony requires, as a matter of law, that her testimony be accepted as true. (Doc. # 14 at 32-34) (citing *Foote v. Chater*, 67 F.3d 1553, 1561 (11th Cir. 1995); *Cannon v. Bowen*, 858 F.2d 1541, 1545 (11th Cir. 1988)).

Plaintiff asserts the court should remand with instructions to award her disability and DIB. (Doc. # 14 at 34). In the alternative, Plaintiff argues this court should remand with instructions to

(1) reassess her fibromyalgia and the effects on her RFC and (2) reassess her credibility determination giving proper weight to her subjective testimony as true. (*Id*. at 35).

## IV.    Standard of Review

On appeal, the court will "review *de novo* the legal principles upon which the Commissioner's decision is based." *Moore v. Barnhart*, 405 F. 3d 1208, 1211 (11th Cir. 2005). Judicial "review of the Commissioner's decision is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see* 42 U.S.C. § 405(g). When reviewing factual findings, the Commissioner's "findings are conclusive if they are supported by substantial evidence." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (citation omitted); *see* 42 U.S.C. § 405(g).

Substantial evidence is explained as "the Commissioner's factual findings [being] more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'" *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)); *see Moore*, 405 F.3d at 1211. It is important to note that "[e]ven if the evidence preponderates against the Commissioner's factual findings, [the court] must affirm if the decision reached is supported by substantial evidence." *Martin*, 894 F.2d at 1529. The court's judicial review does not include "deciding the facts anew, making credibility determinations, or re-weighing the evidence." *Moore*, 405 F.3d at 1211.

As a result, when addressing the ALJ's credibility determination regarding a claimant's subjective pain testimony, this court "will not disturb a clearly articulated credibility finding supported by substantial evidence." *Cates v. Comm'r of Soc. Sec.*, 752 F. App'x 917, 920 (11th

Cir. 2018) (citing *Foote*, 67 F.3d at 1562); *see also Douglas v. Comm'r, Soc. Sec. Admin.*, 832 F. App'x 650, 656-57 (11th Cir. 2020) ("[C]redibility determinations are the province of the ALJ.") (quoting *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014)). "The question is not . . . whether [the] ALJ could have reasonably credited [the] testimony, but whether the ALJ was clearly wrong to discredit it." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 939 (11th Cir. 2011).

## V.     Discussion

Plaintiff first argues that the ALJ erred in step two in determining that her fibromyalgia was not a medially determinable impairment. Second, Plaintiff argues the ALJ did not properly evaluate the medical opinions in the record. And third, Plaintiff asserts the ALJ's credibility determination was not supported by substantial evidence. The court will address each argument in turn.

### 1.     Whether the ALJ Erred in Step Two When Determining That Plaintiff's Fibromyalgia Was Not a Medically Determinable Impairment

At step two of the "sequential evaluation process to determine whether a claimant is disabled . . . the ALJ must 'consider the medical severity of [the claimant's] impairment(s).'" *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1237 (11th Cir. 2004) (quoting 20 C.F.R. § 404.1520(a)(4)(ii)). If the claimant does "not have a severe medically determinable physical or mental impairment that meets the duration requirement . . . or a combination of impairments that is severe and meets the duration requirement . . . [the ALJ] will find that [the claimant] [is] not disabled." 20 C.F.R. § 404.1520(a)(4)(ii).

However, "[a]n impairment or combination of impairments is not severe if it does not significantly limit [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R.

§ 404.1522(a).  For a claimant to establish that they have a medically determinable physical or mental impairment, the "impairment(s) must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1521. The claimant cannot rely only on a "statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)," or to establish disability in general. *Id.*; *see* 20 C.F.R. § 404.1529(a). On the other hand, "[a] claimant's burden to establish a severe impairment at step two is only 'mild' . . . [because] [t]his step is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.'" *Schink*, 935 F.3d at 1265 (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)).  An ALJ will still "consider all of [the claimant's] symptoms, including pain, and the extent to which [those] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence . . . and any description . . . medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [their] ability to work." 20 C.F.R. § 404.1529(a).

If a claimant alleges fibromyalgia as an impairment, "unique issues arise . . . [because] [f]ibromyalgia 'often lacks medical or laboratory signs, and is generally diagnosed mostly on [the claimant's] described symptoms.'" *Horowitz v. Comm'r of Soc. Sec.*, 688 F. App'x 855, 863 (11th Cir. 2017) (quoting *Moore*, 405 F.3d at 1211). This could result in "a claimant's subjective complaints . . . be[ing] the only means of determining the severity of [their] condition and the functional limitations [a claimant] experiences." *Id.* When the claimant provides evidence from an acceptable medical source, the ALJ "cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the [claimant's] medical history and conducted a physical exam. [The ALJ] will review the physician's treatment notes to see if they

are consistent with the diagnosis of [fibromyalgia], determine whether the [claimant's] symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the [claimant's] physical strength and functional abilities." SSR 12-2p(I), 2012 WL 3104869. While these generally allow a claimant to establish that they have a medically determinable impairment of fibromyalgia, specific criteria is used by the ALJ, which is either based on medically determinable impairments consistent with the 1990 American College of Rheumatology ("ACR") Criteria for the Classification of Fibromyalgia or the 2010 ACR Preliminary Diagnostic Criteria. *Id*.

Under the 1990 ACR Criteria, a medically determinable impairment of fibromyalgia can be established if the claimant has (1) a "history of widespread pain . . . that has persisted (or that persisted) for at least 3 months . . . may fluctuate in intensity and may not always be present"; (2) "[a]t least 11 positive tender points . . . found bilaterally (on the left and right sides of the body) and both above and below the waist";[1] and (3) [e]vidence that other disorders that could cause the symptoms or signs were excluded."[2] SSR 12-2p(II)(A). Under the 2010 ACR Criteria, a medically determinable impairment of fibromyalgia can be established if the claimant has (1) a "history of widespread pain";[3] (2) "[r]epeated manifestations of six or more [fibromyalgia] symptoms, signs, or co-occurring conditions";[4] and (3) "[e]vidence that other disorders that could cause the

---

[1] Tender spots include "18 . . . sites . . . located on each side of the body at the: Occiput (base of the skull); Low cervical spine (back and side of the neck); Trapezius muscle (shoulder); Supraspinatus muscle (near the shoulder blade); Second rib (top of the rib cage near the sternum or breast bone); Lateral epicondyle (outer aspect of the elbow); Gluteal (top of the buttock); Greater trochanter (below the hip); and Inner aspect of the knee," including specific criteria on "testing the tender-point sites." SSR 12-2p(II)(A)(2).

[2] Because "[o]ther physical and mental disorders may have symptoms or signs that are the same or similar to those resulting from [fibromyalgia] . . . it is common in cases . . . to find evidence of examinations and testing that rule out other disorders that could account for the person's symptoms and signs." SSR 12-2p(II)(A)(3).

[3] *See* SSR 12-2p(II)(A)(1).

[4] "[E]specially manifestations of fatigue, cognitive or memory problems ('fibro fog'), waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome . . .. 'Waking unrefreshed' may be indicated in the case

symptoms or signs were excluded."[5] SSR 12-2p(II)(B). Whether based on the 1990 or 2010 ACR Criteria, an ALJ "may [also] consider evidence from medical sources who are not 'acceptable medical sources' to evaluate the severity and functional effects of the impairment(s)."[6] SSR 12-2p(III)(B)(1). If the ALJ finds that there is insufficient evidence to determine whether fibromyalgia is a medically determinable impairment, and they have taken "action to try to resolve the insufficiency," but find "[t]he evidence is still insufficient . . . despite [their] efforts to obtain additional evidence, [the ALJ] may make a determination or decision based on the evidence [they] have." SSR 12-2p(III)(C).

Like subjective symptoms of pain, when the ALJ "evaluate[s] a [claimant's] statements about his or her symptoms and functional limitations . . . [they] follow [a] two-step process:" (1) the ALJ determines whether there are "medical signs and findings that show the [claimant] has an [medically determinable impairment(s)] which could reasonably be expected to produce the pain or other symptoms alleged;" and (2) "evaluate[s] the intensity and persistence of the [claimant's] pain or any other symptoms and determine[s] the extent to which the symptoms limit the [claimant's] capacity for work." SSR 12-2p(IV); *see also Laurey v. Comm'r of Soc. Sec.*, 632 F. App'x 978, 987-88 (11th Cir. 2015). Only after determining if the claimant has a medically determinable impairment of fibromyalgia will the ALJ "consider the severity of the impairment,

record by the person's statements describing a history of non-restorative sleep, such as statements about waking up tired or having difficulty remaining awake during the day, or other statements or evidence in the record reflecting that the person has a history of non-restorative sleep." SSR 12-2p(II)(B)(2), note 11.

[5] *See* SSR 12-2p(II)(A)(3).

[6] Not only can this "help [the ALJ] to assess the person's ability to function day-to-day and over time," but, "[i]t may also help [the ALJ] when [they] make findings about the credibility of the [claimant's] allegations about symptoms and their effects. Examples of nonmedical sources include: a. Neighbors, friends, relatives, and clergy; and b. Past employers, rehabilitation counselors, and teachers; and c. Statements from SSA personnel who interviewed the person." SSR 12-2p(III)(B)(2).

whether the impairment medically equals the requirements of a listed impairment, and whether the impairment prevents the [claimant] from doing [their] past relevant work or other work that exists in significant numbers in the national economy." SSR 12-2p(V).

Even though fibromyalgia "cannot meet a listing in [A]ppendix 1 because [it] is not a listed impairment," at step three, the ALJ will instead "determine whether [the claimant's fibromyalgia] medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment." SSR 12-2p(VI)(C). "When the [claimant]'s impairment(s) does not meet or equal a listed impairment . . . [the ALJ] base[s his] RFC assessment on all relevant evidence in the case record. [The ALJ] consider[s] the effects of all of the [claimant's] medically determinable impairments, including impairments that are 'not severe.' For a person with [fibromyalgia], [the ALJ] will consider a longitudinal record whenever possible because the symptoms of [fibromyalgia] can wax and wane so that a person may have 'bad days and good days.'" SSR 12-2p(VI)(D).

A court may find an ALJ erred when "the credibility of [the claimant's] complaints of disabling pain are bolstered by evidence that [the claimant] made numerous visits to [their] doctors over the course of several years, underwent numerous diagnostic tests, and was prescribed numerous medications . . . [and o]ther than a lack of objective medical findings, there is nothing in the record to suggest that [the claimant] did not suffer the degree of pain [they] reported or that [the claimant's] doctors should have disbelieved their complaints." *Somogy v. Comm'r of Soc. Sec.*, 366 F. App'x 56, 64-65 (11th Cir. 2010); *see also Brown-Gaudet-Evans v. Comm's of Soc. Sec.*, 673 F. App'x 902, 906 (11th Cir. 2016). Even if this court reviews the evidence in the record "take[s] a different view of it as a factfinder . . . if there is substantially supportive evidence, the

findings cannot be overturned." *Barron v. Sullivan*, 924 F.2d 227, 229-30 (11th Cir. 1991). Similarly, even if the ALJ commits an error, if that error "does not affect the outcome, it's harmless and doesn't require reversal or remand." *Whitten v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 791, 793 (11th Cir. 2019) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)).

Here, after discussing the required criteria, the ALJ discredited Plaintiff's subjective complaints and provided the following clearly articulated reasons for doing so: "[a] diagnosis of fibromyalgia is not a medically determinable impairment . . . [t]he objective medical record does not corroborate the alleged severity of [Plaintiff's] complaints of pain, medication use reflected in the record, or the [Plaintiff's] daily activities." (R. 20). Like the ALJ in *Moore*, the ALJ here relied on the inconsistencies between Plaintiff's testimony and the objective medical record. *Moore*, 405 F.3d at 1212.[7] In establishing that Plaintiff's fibromyalgia was not a medically determinable impairment, the ALJ pointed to the objective medical findings of no muscle disuse atrophy, normal muscle bulk and tone, no acute distress, and a consistent notation as being alert and oriented. (R. 20-21). The ALJ determined these findings did not support the subjective testimony of Plaintiff. *Id.* The ALJ concluded that Plaintiff's "diagnosis of [f]ibromyalgia [was] inconsistent with the requirements of SSR 12-2 and found not to be a medically determinable impairment." (R. 21).

In addition, at step three, although fibromyalgia cannot meet a listing because it is not a listed impairment, the ALJ must still determine whether Plaintiff's fibromyalgia medically equals a listing or whether it medically equals a listing in combination with at least one other medically determinable impairment. SSR 12-2p(VI)(C). The ALJ here assessed that very question. After

---

[7] In *Moore*, the ALJ noted a "lack of corroborative objective findings of impairment," the court found that this "was not the basis for the ALJ's own negative credibility determination." *Moore*, 405 F.3d at 1212. Like the ALJ's findings here, the ALJ in *Moore*, "relied on the inconsistencies between [the claimant's] descriptions of her diverse daily activities and her claims of infirmity." *Id*. The court concluded that the ALJ properly discredited the claimant's testimony "[a]s the ALJ provided a detailed factual basis for [the] credibility determination, which did not turn on the lack of objective evidence documenting fibromyalgia." *Id*.

careful consideration of Plaintiff's post cervical fusion, obesity, asthma, and mental impairments, the ALJ determined that while Plaintiff does in fact face limitations, she can perform light work. (R. 22-23). Plaintiff testified she can drive, dress herself, perform light exercise, complete household chores, and attend church. *Id.* While noting moderate restrictions and limitations, the ALJ concluded Plaintiff does not have a combination of mental and/or physical impairments that meet the severity of one of the listed impairments in 20 CFR Part 404. *Id.* Accordingly, the ALJ noted Plaintiff "has the residual functional capacity to perform light work." (R. 23). Those findings are supported by substantial evidence.

### 2.      Whether the ALJ Properly Evaluated the Medical Opinions

When an ALJ also looks at medical opinions, she "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a); *see Works v. Saul*, No 4:19-CV-01515, 2021 WL 690126, at \*2-4, 15 (N.D. Ala. Feb. 23, 2021). Instead,

> when evaluat[ing] the persuasiveness of medical opinions . . . [the ALJ] will consider those medical opinions . . . using the factors listed[8] . . . the most important factors . . . [being] supportability . . . and consistency. . . .. Therefore, [the ALJ] will explain how [they] considered the supportability and consistency factors for a medical source's medical opinions . . . in [their] determination or decision. [The ALJ] may, but [is] not required to, explain how [they] considered the [other] factors . . . as appropriate.

20 C.F.R. § 416.920c. The ALJ "must provide sufficient detail concerning the degree to which he finds a medical source's opinion persuasive so that a reviewing court may understand the ALJ's analysis." *Works*, 2021 WL 690126 at \*15 (quoting *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d

---

[8] The factors are listed as follows: supportability, consistency, relationship with the claimant, specialization, and "other factors that tend to support or contradict a medical opinion.... [t]his includes, but is not limited to, evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirement." 20 C.F.R. § 416.920c(c)(1)-(5).

1176, 1179 (11th Cir. 2011)); *see Jackson v. Soc. Sec. Admin., Comm'r*, 779 F. App'x 681, 684

(11th Cir. 2019). However, a "statement by a medical source that [a claimant is] 'disabled' or

'unable to work' does not mean that [the ALJ] will determine that [the claimant is] disabled." 20

C.F.R. § 404.1527(d)(1). Instead, the ALJ "use[s] medical sources . . . to provide . . . opinions, on

the nature and severity of [the plaintiff's] impairment(s)." 20 C.F.R. §404.1527(d)(2). Further,

> [t]he regulations provide that the final responsibility for deciding
> issues such as these are reserved to the Commissioner . . . opinions
> from any medical source on issues reserved to the Commissioner
> must never be ignored. The adjudicator is required to evaluate all
> evidence in the case record that may have a bearing on the
> determination or decision of disability, including opinions from
> medical sources about issues reserved to the Commissioner. If the
> case record contains an opinion from a medical source on an issue
> reserved to the Commissioner, the adjudicator must evaluate all the
> evidence in the case record to determine the extent to which the
> opinion is supported by the record.

SSR 96-5p.[9]

Here, the ALJ determined the medical opinions of the following persons were neither

probative nor persuasive: Erin E. Collier, FNP, Penelynne Flores, FNP, and Celia M. Fernandez,

MD. (R. 29). The ALJ made each of those determinations for the same reason: "The opinion that

[Plaintiff] is permanently disabled and unable to maintain gainful employment is an assessment of

[Plaintiff's] ability to perform work, which is an opinion of an issue reserved to the Commissioner

(20 C.F.R. § 1527(e) (2). As a result, it is not entitled to any special significance and . . . is neither

probative nor persuasive." (Doc. 10-3).

FNP Erin Collier provided a medical opinion stating Plaintiff is unable to perform duties

of her job and her physical health is affecting her ability to function on a daily basis. (R. 29).

---

[9] The Commissioner's Memorandum in Support specifically responding to Plaintiff's medical opinion claims, focused on the new regulations regarding weight given to treating physician opinions. (Doc. # 15 at 12-14) (citing 20 C.F.R. § 404.1520c). Regardless of weight, the ALJ still must consider the entire medical record, including opinions on issues reserved to the ALJ.

However, FNP Collier also opined Plaintiff is "emotionally strong" and "handles her physical health condition 'exceptionally well'". *Id.* In this court's consideration of the entire record, the statements of FNP Collier are consistent with the ALJ's conclusion that Plaintiff is "unable to perform past relevant work." (R. 36).

In consideration of the medical opinion of FNP Penelynne Flores that Plaintiff suffers from conditions rendering her unable to work, the ALJ also reviewed FNP Flores's treatment records of Plaintiff. (R. 24-25). The records reveal that Plaintiff's physical examination was normal and asthma "was diagnosed as 'mild, persistent asthma, uncomplicated.'" *Id.* The ALJ opined FNP Flores's treatment records were "inconsistent with [Plaintiff's] subjective complaints". (R. 25).

Dr. Celia M. Fernandez provided a medical opinion that Plaintiff is "permanently disabled and unable to maintain gainful employment." (R. 29). This is an opinion related to Plaintiff's ability to perform work and specifically reserved for the Commissioner. Nevertheless, the ALJ also considered medical records of Dr. Fernandez's treatment of Plaintiff. (R. 28). Dr. Fernandez's records indicate Plaintiff was "well developed and well nourished, in no acute distress and observed as alert and oriented . . . essentially a normal physical examination." *Id.*

In light of the ALJ's evaluation of the entire record, and after careful review, this court finds the ALJ properly evaluated the medical opinions of Dr. Celia Fernandez, FNP Penelynne Flores, and FNP Erin E. Collier.

### 3.    Whether the ALJ's Credibility Determination is Supported By Substantial Evidence

"If [an] ALJ decides not to credit a [plaintiff's] testimony about her subjective symptoms, the ALJ must articulate explicit and adequate reasons for doing so unless the record obviously supports the credibility finding." *Meehan v. Comm'r of Soc. Sec.,* 776 Fed. App'x 599, 603 (11th

Cir. 2019). A court must not disturb a proper credibility finding that is supported by substantial evidence in the record. *Id.*

Here, after consideration of the entire record, the ALJ found Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms." (R. 24). However, the ALJ found inconsistencies between Plaintiff's statements of the "intensity, persistence and limiting effects of these symptoms" and the medical evidence and other evidence in the record. *Id.* In reaching this determination, the ALJ considered Plaintiff's examinations by multiple physicians, evaluations from mental health physicians, Plaintiff's ability to drive, Plaintiff's own hearing testimony of her day-to-day activities, and the third-party report of Plaintiff's spouse. (R. 24-35). The ALJ provided a thorough explanation of the credibility findings, and the ALJ's findings are supported by substantial evidence. The ALJ did not err in the credibility determination at issue here.

## VI.   Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and that the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this March 14, 2022.

R. DAVID PROCTOR
UNITED STATES DISTRICT JUDGE